**FOR PUBLICATION**

# UNITED STATE COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: WELLS FARGO HOME MORTGAGE

JASON MEVORAH, GENARO PEREZ, and PERRY DERRICK,
              *Plaintiffs-Appellees,*

v.

WELLS FARGO HOME MORTGAGE,
              *Defendant-Appellant.*

No. 08-15355
D.C. No. CV-06-01770-MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn Hall Patel, District Judge, Presiding

Argued and Submitted
February 5, 2009—Pasadena, California

Filed July 7, 2009

Before: Barry G. Silverman and Consuelo M. Callahan,
Circuit Judges, and Richard Mills, District Judge.*

Opinion by Judge Mills

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

**COUNSEL**

Lindbergh Porter, Jr., Littler Mendelson, P.C., San Francisco, California, for the defendant-appellant.

Arthur W. Lazear (briefed), Hoffman & Lazear, Oakland, California; Kevin J. McInerney (argued), McInerney & Jones, Reno, Nevada, for the plaintiffs-appellees.

Raymond A. Cardozo, Reed Smith, LLP, San Francisco, California, for the amici.

Piper Hoffman, Otten & Golden, LLP, New York, New York, for the amici.

---

## OPINION

MILLS, District Judge:

This interlocutory appeal challenges a district court order certifying a group of California plaintiffs as a class.[1]

The dispute is whether the court abused its discretion in finding that the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) was satisfied, based — in large part — on an employer's internal policy of treating its employees as exempt from overtime laws.

While such uniform exemption policies are relevant to the Rule 23(b)(3) analysis, we hold that it is an abuse of discretion to rely on such policies to the near exclusion of other relevant factors touching on predominance.

### I.

The plaintiffs ("California plaintiffs") are current and former home mortgage consultants ("HMCs") who were employed by Wells Fargo Home Mortgage ("Wells Fargo") in California. Since 2001, there have been some 5000 such HMCs.

---

[1]We defer ruling on the claims of the nationwide plaintiffs until resolution of the issues raised in *Sullivan v. Oracle Corp.*, 557 F.3d 979 (9th Cir. 2009). Counsel is directed to notify us when a resolution has been reached in that case.

HMCs are charged with marketing and selling mortgages. Previously, they were compensated solely through a type of sales commission. In 2005, Wells Fargo changed the commission system to include a minimum, non-recoverable draw against commissions.

During the class period, Wells Fargo neither paid overtime nor tracked the hours of the HMCs. Rather, it treated nearly all of its HMCs as exempt from state and federal overtime requirements. Believing this exemption decision was contrary to law, several groups of plaintiffs brought putative class actions for violations of state labor and overtime laws. They also asserted that Wells Fargo engaged in unfair and unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.,* by violating various parts of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* These cases, as well as those filed by non-California plaintiffs, were consolidated in the Northern District of California by the Judicial Panel on Multidistrict Litigation.

II.

The California plaintiffs sought class certification. In opposition, Wells Fargo argued that individual issues predominated and that class treatment was not superior. In particular, Wells Fargo pointed to a number of exemptions under the FLSA (applicable through the UCL) and California labor law that would require individualized inquiries.

In an order dated October 17, 2007, the district court carefully reviewed each exemption identified by Wells Fargo and found that individual inquiries would be necessary with respect to five exemptions: the federal outside sales exemption, 29 U.S.C. § 213(a)(1); California's outside sales exemption, Cal. Lab. Code § 1171; California's commissioned sales exemption, 8 Cal. Code Regs. § 11040(3)(D); California's administrative exemption, 8 Cal. Code Regs.

§ 11040(1)(A)(2); and the federal highly compensated employee exemption, 29 C.F.R. § 541.601. These inquiries, the court found, would require an analysis of the job experiences of the individual employees, including the amount of time worked by each HMC, how they spend their time, where they primarily work, and their levels of compensation.

In contrast, the court found that common issues arose only with respect to two exemptions: whether Wells Fargo qualifies as a "retail or service establishment" for purposes of a federal exemption for commissioned sales, 29 U.S.C. § 207, and whether the employees earned "commission wages" under California's commissioned sales exemption, 8 Cal. Code Regs. § 11040(3)(D). The remaining exemption, the federal administrative exemption, 29 C.F.R. § 541.200, was deemed irrelevant. Neither party directly challenges the district court's findings on any of these issues.

Despite the conclusion that numerous individualized inquiries would be necessary, the district court ultimately granted certification by relying on Wells Fargo's uniform exemption policies:

> Taken together, defendants' declarations have raised serious issues regarding individual variations among HMC job duties and experiences. However, the common factual and legal issues nonetheless predominate. Wells Fargo's uniform policies regarding HMCs weigh heavily in favor of class certification. As numerous courts have recognized, it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation. This is particularly true in a situation such as this, where the difficulty of proving hours worked and compensation received is exacerbated by defendants' complete failure to

maintain pertinent records. Accordingly, plaintiffs have satisfied their burden and demonstrated that common issues predominate.

E.R. 17.[2]

Following this order, Wells Fargo successfully petitioned for interlocutory review pursuant to Rule 23(f) and 28 U.S.C. § 1292(e).

## III.

In a Rule 23(f) appeal, an appellate court must "limit [its] review to whether the district court correctly selected and applied Rule 23's criteria." *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008). A district court's decision to certify a class under Rule 23 is reviewed for abuse of discretion. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724-25 (9th Cir. 2007). Abuse exists in three circumstances: (1) reliance on an improper factor, (2) omission of a substantial factor, or (3) a clear error of judgment in weighing the correct mix of factors. *Parra,* 536 F.3d at 977-78 (citing *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000)).

## IV.

**[1]** Under Rule 23(b)(3), a class may be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[3] The predominance

---

[2]Although our ruling focuses primarily on the predominance analysis, we note that the district court's superiority analysis also leaned heavily on the exemption policy.

[3]There is no dispute concerning the Rule 23(a) factors.

inquiry of Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (citation and internal quotation marks omitted). The focus is on "the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The question here is whether the district court abused its discretion in finding Rule 23(b)(3)'s predominance requirement was met based on Wells Fargo's internal policy of treating all HMCs as exempt from state and federal overtime laws. To succeed under the abuse of discretion standard, Wells Fargo must demonstrate that the district court either (a) should not have relied on its exemption policy at all or (b) made a clear error of judgment in placing too much weight on that single factor *vis-a-vis* the individual issues.[4]

The first line of attack, that Wells Fargo's exemption policy was an impermissible factor, is a non-starter. An internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment. Therefore, an exemption policy is a permissible factor for consideration under Rule 23(b)(3).

Wells Fargo's arguments are better construed as a challenge to the weight accorded to the internal exemption policies under the third abuse of discretion prong: mulling the proper factors but committing clear error in weighing them. To analyze this question, we first ask how much weight the district court gave to the exemption policy. Plaintiffs suggest

---

[4]Nothing in the briefs implicates the remaining abuse prong: the omission of a substantial factor.

the weight was minimal; Wells Fargo claims that the district court's reliance was tantamount to estoppel.

A review of the California certification order lends substantial credence to Wells Fargo's position. Although the court's analysis of each exemption was careful and considered, its ultimate decision was clearly driven by Wells Fargo's uniform exemption policy. Indeed, the court found "serious issues regarding individual variations among HMC job duties and experiences" but nevertheless concluded that common questions predominated because "it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation." E.R. 17. As such, we must conclude that the district court's reliance on Wells Fargo's internal exemption policy was substantial.

**[2]** This leads to the central question: whether such heavy reliance constituted a clear error of judgment in assaying the predominance factors. District courts within this circuit have split on the relevance of exemption policies. The district court relied primarily on *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-13 (C.D. Cal. 2005), which found predominance of common issues based on an employer's policy of treating all employees in a certain position as uniformly exempt from overtime compensation requirements. In contrast, another district court has expressed doubt about *Wang*, and found that uniform exemption policies are merely a minor factor in the predominance analysis. *See Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 603-04 (E.D. Cal. 2008) (rejecting "estoppel" position of *Wang*).

**[3]** In determining which rule is appropriate, we begin by examining Rule 23 itself. A principal purpose behind Rule 23 class actions is to promote "efficiency and economy of litigation." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). In particular, Rule 23(b)(3)'s predominance and supe-

riority requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment). Thus, the " 'notion that the adjudication of common issues will help achieve judicial economy' " is an integral part of the predominance test. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Whether judicial economy will be served in a particular case turns on close scrutiny of "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

Viewed in light of these principles, the rule espoused in *Wang* has little justification. *Wang* essentially creates a presumption that class certification is proper when an employer's internal exemption policies are applied uniformly to the employees. Such an approach, however, disregards the existence of other potential individual issues that may make class treatment difficult if not impossible. Indeed, this case is a prime example, as the district court identified "serious issues regarding individual variations" that were not susceptible to common proof, but nevertheless felt compelled to certify the class.

**[4]** Of course, uniform corporate policies will often bear heavily on questions of predominance and superiority. Indeed, courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) ("Where . . . there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite

arguments about 'individualized' differences in job responsibilities."). Such centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof.

**[5]** But Wells Fargo's blanket application of exemption status, whether right or wrong, is not such a rule. In contrast to centralized work policies, the blanket exemption policy does nothing to facilitate common proof on the otherwise individualized issues.

**[6]** To illustrate, consider the federal outside salesperson exemption. This exemption applies where, among other things, the employee is "customarily and regularly away from the employer's place of . . . business . . . ." 29 C.F.R. § 541.500(a). Often, this exemption will militate against certification because, as the district court noted, it requires "a fact-intensive inquiry into each potential plaintiff's employment situation. . . ." E.R. 11. A centralized policy requiring employees to be at their desks for 80% of their workday would change this individual issue into a common one. Therefore, such a corporate policy would be highly relevant to the predominance analysis. A uniform exemption policy, however, has no such transformative power. Whether such a policy is in place or not, courts must still ask where the individual employees actually spent their time. As one court succinctly explained, "[t]he fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Campbell*, 253 F.R.D. at 603.

**[7]** In short, Wells Fargo's uniform exemption policy says little about the main concern in the predominance inquiry: the balance between individual and common issues. As such, we hold that the district court abused its discretion in relying on

that policy to the near exclusion of other factors relevant to the predominance inquiry.[5]

## V.

Finding that the district court abused its discretion, we REVERSE its order certifying the California class and REMAND this case for a new certification analysis consistent with this opinion..

---

[5]Wells Fargo also argues that the California plaintiffs cannot bring a state law opt-out class action because the opt-out procedures are in tension with the FLSA opt-in procedures. The cases cited in support, however, only address *concurrent* FLSA and state law claims, whereas the California plaintiffs have not brought a collective action under the FLSA. Whether an *unasserted* FLSA claim bars a state law suit is a question of preemption. Wells Fargo, however, largely disclaims making preemption arguments and, in any event, has not cited this Court's FLSA preemption jurisprudence, *e.g., Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149-55 (9th Cir. 2000); *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990); *see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 195 n.12 (4th Cir. 2007) (discussing Ninth Circuit law regarding the FLSA preemption of parallel state claims), or that of other circuit courts, *e.g., Anderson*, 508 F.3d at 191-95 (finding parallel claims preempted). *See generally* Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 Am. Univ. L.R. 515 (2009). As such, we decline to explore the question.