**In re WELLS FARGO HOME MORTGAGE OVERTIME PAY LITIGATION.**

No. C 06–01770 MHP.

United States District Court,
N.D. California.

Jan. 13, 2010.

Arthur William Lazear, H. Tim Hoffman, Hoffman & Lazear, Oakland, CA, James F. Clapp, Dostart Clapp Gordon & Coveney, LLP, San Diego, CA, Kevin J. McInerney, McInerney & Jones, Reno, NV, for Jason Mevorah.

Ashlea Gayle Schwarz, Kansas City, MO, for Jason Mevorah, Genaro Perez, Perry Derrick, and Caroline Urso.

Alison S. Hightower, Lindbergh Porter, Jr., Littler Mendelson, PC, San Francisco, CA, for Jason Mevorah, Genaro Perez, Perry Derrick, Caroline Urso, Wells Fargo Home Mortgage, Inc., Wells Fargo Mortgage Company, and Wells Fargo Bank, National Association.

Charles Scott Russell, Callahan, McCune & Willis, APLC, Irvine, CA, Christine Marie Schenone, Callahan, McCune & Willis, San Francisco, CA, Robert Walter Thompson, Callahan McCune & Willis, APLC, Tustin, CA, for Genaro Perez.

George Allan Hanson, Eric Landon Dirks, Stueve Siegel Hanson LLP, Kansas City, MO, Michael B. Marker, Rex Carr Law Firm, East St. Louis, IL, for Perry Derrick.

James F. Clapp, Dostart Clapp Gordon & Coveney, LLP, San Diego, CA, Kevin J. McInerney, McInerney & Jones, Reno, NV, for Caroline Urso.

Richard Howard Rahm, Littler Mendelson, San Francisco, CA, for Wells Fargo Home Mortgage, Inc., Wells Fargo Mortgage Company and Wells Fargo Bank, National Association.

## MEMORANDUM & ORDER

### Re: Plaintiff's Renewed Motion for Class Certification

MARILYN HALL PATEL, District Judge.

This multidistrict litigation arises out of three putative collective actions and one putative class action by current and former Home Mortgage Consultants ("HMCs"), against Wells Fargo Home Mortgage ("defendant" or "Wells Fargo"), the HMCs' current or former employer. The HMCs seek to recover overtime pay under various federal and state laws. On October 18, 2007, this court granted a motion for class certification filed by James Mevorah ("Mevorah"), the proposed class representative of a class of HMCs who worked for Wells Fargo in California. *In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 06–1770 MHP, 2007 WL 3045995 (N.D.Cal. Oct. 18, 2007). Wells Fargo appealed that order, and on July 7, 2009, the Ninth Circuit reversed, mandating that this court conduct a "a new certification analysis consistent" with its opinion. *In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 571 F.3d 953, 959 (9th Cir.2009). At an August 10, 2009, status conference, the court ordered that the parties rebrief the motion for class certification in light of the Ninth Circuit's opinion. Now before the court is the rebriefing, which plaintiff has labeled as a "Renewed Motion for Class Certification." Having considered the arguments and submissions of the parties and for the reasons set forth below, the court enters the following memorandum and order.

*BACKGROUND*

The court discussed the employment conditions of Wells Fargo's California HMCs in great detail in its order initially granting plaintiff's motion for class certification. As none of the material facts have changed, the court provides essentially the same factual summary as background to the following discussion.

### I. Wells Fargo's Practices Related to HMCs

HMCs are employees of Wells Fargo whose primary function is to market and sell residential mortgages, for which they are paid a commission based on their sales. Since January 2005, HMCs have also been paid a minimum, non-recoverable draw against commissions. Defendant asserts that there are currently between 1,000 and 1,500 HMCs in California, plus thousands more nationwide. Since 2001, there have been approximately 5,000 California HMCs and approximately 20,000 nationwide. *See* Docket No. 51 (Blackwell Dec.) ¶ 3. During the relevant period, California HMCs were paid an

average annual compensation of $149,000, with some HMCs receiving more than $500,000 or $1 million. *See* Docket No. 15 (Cahalan Dec.) ¶ 2. Mevorah acknowledged that a "fairly good sized portion of the class exceeded $100,000 in annual commissions," but claimed that these commissions arose after working "very long hours" in a highly competitive business. *See* Docket No. 39 (Motion to Certify Class ("Mot.")) at 3. There are no reliable time records of the actual hours worked by HMCs during the class period. *See* Case No. C–05–02722, Docket No. 43 (Mevorah Dec.) at ¶ 9. Wells Fargo claims that HMCs are entrepreneur-type employees who have a large degree of autonomy in deciding how to shape their individual business practices. Blackwell Dec. ¶ 4. Importantly, Wells Fargo classifies all HMCs as exempt from both federal and state overtime laws.

HMCs may specialize in a particular type of mortgage they sell, with each specialization entailing a distinct set of strategies and activities. Among the specializations identified by Wells Fargo are "prime HMCs," who work with borrowers qualifying for the best interest rates, "sub-prime HMCs," who work with borrowers with impaired credit, "reverse mortgage HMCs," who work primarily with seniors, "renovation HMCs" specializing in mortgages to finance home improvement, "builder HMCs" focusing on particular housing developments and "emerging market HMCs" who develop relationships with historically underserved communities. *Id.* ¶¶ 6–9.

In addition to these varied specializations, Wells Fargo identifies a host of factors which, according to Wells Fargo, create wide variations in compensation, total hours worked, and the amount of time that HMCs spend in and out of the office or consulting with clients. Firstly, HMCs' work-style preferences and marketing strategies lead to different approaches and time commitments based on different target customers and referrers. *Id.* ¶ 10. Secondly, because Wells Fargo provides training only and does not supervise HMCs, an HMC may set his or her own compensation goal and work as little or as much as desired to attain that goal. *Id.* ¶¶ 11–12. Thirdly, HMCs allocate work time differently as they gain experience and build

skills and client bases. *Id.* ¶ 13. Fourth, HMCs operate in a variety of geographic locations within California, including densely-populated and sparsely-populated cities, affluent suburbs and rural communities, with demographic and economic variations creating different experiences among HMCs. *Id.* ¶ 14. Finally, market forces such as fluctuations in interest rates and consumer preferences based on the time of year (with fewer people buying property during the Fall and Winter months) create differences among HMC work. *Id.* ¶ 15.

## II. *Procedural Background*

This action was initially filed by Mevorah on February 10, 2005, in the California Superior Court for the County of San Francisco, alleging eight causes of action related to defendant's classification of HMCs as exempt employees: (1) violation of California Business and Professions Code section 17200 ("section 17200") for failure to pay overtime as required by the Fair Labor Standards Act ("FLSA"); (2) violation of section 17200 for violation of California Wage Order 4–2001; (3 & 4) two causes of action for violation of California Labor Code section 1194 for failure to pay overtime; (5) violation of section 17200 for failure to pay overtime; (6) violation of California Labor Code sections 201 and 202 for failure to pay overtime upon termination; (7) violation of California Labor Code section 226.7 for failure to provide required meal and rest breaks; and (8) declaratory relief. Defendant removed the action to this court on March 22, 2005. Mevorah's action was subsequently related to the Multidistrict Litigation captioned as *In re Wells Fargo Home Mortgage Overtime Pay Litigation,* No. MDL 06–1770 MHP.

### a. *The October 18, 2007, order granting the motion for class certification*

Mevorah moved the court to certify a class defined as "All persons who were employed by Wells Fargo Home Mortgage in the State of California as a Home Mortgage Consultant after February 10, 2001." As is alluded to above, this court granted that motion and certified the class action. In the order granting the motion, the court devoted the

bulk of its discussion to the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b) (3). Rule 23(b)(3) mandates that a class action should only be certified if a court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Wells Fargo asserted that individual inquiries regarding whether class members qualified for one of seven state and federal exemptions from the relevant overtime laws would overwhelm common issues, rendering certification inappropriate. Mevorah, unsurprisingly, argued to the contrary.

To resolve the issue, the court examined each exemption carefully. It found that individualized inquiries would be required to determine if class members qualified for the federal and California "outside sales exemption", the California "administrative exemption", the California "commissioned sale exemption", and the federal "highly compensated employee exemption." *In re Wells Fargo*, 2007 WL 3045995, at *7–11 Despite recognizing that Wells Fargo had "raised serious issues regarding individual variations among HMC job duties and experiences," the court held that "common factual and legal issues nonetheless predominate." *Id.* at *11. Explaining its conclusion, the court wrote:

> Wells Fargo's uniform policies regarding HMCs weigh heavily in favor of class certification. As numerous courts have recognized, it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation. This is particularly true in a situation such as this, where the difficulty of proving hours worked and compensation received is exacerbated by defendant's complete failure to maintain pertinent records. Accordingly, plaintiff[ ] have satisfied their burden and demonstrated that common issues predominate.

*Id.* The court's holding rested largely on the reasoning of *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D.Cal.2005), which held in the context of a similar overtime dispute that an employer "cannot, on the one hand, argue that all [putative class members] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [putative class member] in order to determine whether that individual is 'exempt.' " *In re Wells Fargo*, 2007 WL 3045995, at *6 (quoting *Wang*, 231 F.R.D. at 613).

### b. *The Ninth Circuit's Opinion*

Wells Fargo appealed the court's October 18, 2007, order to the Ninth Circuit, which subsequently reversed. The Ninth Circuit held that this court, when determining that common issues predominated, abused its discretion by relying on Wells Fargo's uniform internal exemption policy "to the near exclusion of other factors relevant to the predominance inquiry." *In re Wells Fargo*, 571 F.3d at 959. The court explained that the *Wang* approach—in which a uniform internal exemption policy creates a presumption that common issues predominate—improperly "disregards the existence of other potential individual issues that may make class treatment difficult if not impossible." *Id.* at 958. The Ninth Circuit emphasized that where the applicability of asserted exemptions hinges on how an employee actually performs their work, the employee's job duties, not an exemption policy, must be considered in the predominance analysis. *See id.* at 959 ("Whether a [uniform exemption policy] is in place or not, courts must still ask where the individual employees actually spent their time."). In line with this reasoning, the Ninth Circuit concluded that "Wells Fargo's uniform exemption policy says little about the main concern in the predominance inquiry: the balance between individual and common issues." Accordingly, the Ninth Circuit reversed this court's order and remanded the case so that this court could conduct "a new certification analysis consistent with [its] opinion." *Id.* at 959.

### c. *Rebriefing*

After remand to this court, the court ordered the parties to rebrief the motion for class certification in light of the Ninth Cir-

cuit's opinion. By plaintiff's own admission, there are only a few differences in the case from the time the court originally certified the class. Firstly, Mevorah withdrew as lead plaintiff and was replaced by Caroline Urso ("Urso" or "plaintiff"). Secondly, James Clapp and his law firm joined the case. Thirdly, class notice was sent out, meaning that plaintiff's counsel have been representing the class members for approximately 18 months. Fourthly, plaintiff also slightly altered the class definition to exclude any HMCs who worked on reverse mortgages.[1] And fifthly, plaintiff has agreed to dismiss their state law claims for missed meal and rest breaks. Otherwise, the record before the court is identical to the record considered by the court when it initially certified this case as a class action.

*LEGAL STANDARD*

■ The court laid out the standard for certifying a class under Rule 23(b)(3), but does so again here. A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed.R.Civ.P. 23(a). In addition to satisfying these prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3). *See* Rule 23(b); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Under Rule 23(b)(3), a class may be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The predominance inquiry of Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.2001) (citation and internal quotation marks omitted). The focus is on "the relationship between the common and individual issues." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998).

■ The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1188 (9th Cir.2001), *amended by* 273 F.3d 1266 (9th Cir.2001); *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). In adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. *See Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975). The merits of the class members' substantive claims are generally irrelevant to this inquiry. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir.1983). However, courts are "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon,* 976 F.2d at 509. "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.' " *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir.2008) (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir.2005) and *In re New Motor*

---

1. The new class definition is as follows: "Those persons who were employed by Wells Fargo and worked in California during any period after February 11, 2001, in the capacity of Home Mortgage Consultant, excepting any period when they were engaged in selling reverse mortgages." Docket No. 305 (Renewed Mot. for Class Certification ("Renewed Mot.")) at 3.

*Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir.2008)) (some internal quotation marks omitted). A court may only certify a class after a "rigorous analysis" as to whether the Rule 23's requirements have been satisfied. *Hanon*, 976 F.2d at 509 (internal quotations omitted).

## DISCUSSION

### I. *Rule 23(a) Requirements*

As the Ninth Circuit noted in *In re Wells Fargo*, there is no dispute in this case that the 23(a) requirements have been satisfied. *See In re Wells Fargo*, 571 F.3d at 957 n. 3. Following the Ninth Circuit's decision, the substitution of Urso for class representative Mevorah, and the addition of James Clapp as counsel could have required a reanalysis of the typicality and adequacy requirements. Wells Fargo has posed no objection to these changes to plaintiff's case, and therefore, the court holds that plaintiff still satisfies the Rule 23(a) requirements.

### II. *Rule 23(b)(3) Requirements*

#### a. *Predominance*

The Ninth Circuit's decision—especially when viewed in conjunction with *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir.2009), a companion case the Ninth Circuit heard and decided on the same day as *In re Wells Fargo*—leaves the court with very little discretion. In *In re Wells Fargo*, the Ninth Circuit held that, in conducting the predominance analysis, this court could not rely exclusively on Wells Fargo's uniform exemption policy, to the exclusion of other factors, to find that common issues would predominate. In other words, this court must consider the full range of factors presented by the issues in this case when determining whether issues common to the class would predominate over individualized inquiries. *In re Wells Fargo* left open a slim possibility that on remand, this court could balance all of the relevant factors—the uniform exemption policy and the individualized inquiries necessitated by the various exemptions asserted by Wells Fargo—and still conclude that common issues would predominate. The Ninth Circuit simply required that this court reanalyze the motion for class certification in light of its opinion.

*Vinole*, however, appears to foreclose any viable path for certifying this action as a class action. The *Vinole* class consisted of home loan consultants ("HLCs"), the functional equivalent of the HMCs in this case, who worked for Countrywide Home Loans, Inc. *Vinole*, 571 F.3d at 937–38. As here, the HLCs claimed that Countrywide violated the FLSA and California overtime laws. *Id.* at 938. As here, Countrywide had a uniform policy classifying the HLCs as exempt pursuant to the outside sales exemption. *Id.* As here, Countrywide claimed that it "had no control over what HLCs actually do during the day and does not monitor how HLCs perform their work activities." *Id.* (internal quotation marks omitted). As here, "[e]vidence in the record, in the form of declarations from HLCs regarding the amount of time individual HLCs spent inside and outside the office, suggest[ed] that the time spent in or out of the office varies greatly." *Id.* And as here, Countrywide did "not keep records reflecting whether any particular HLC qualifie[d] for the exemption and d[id] not monitor any possible change in an HLC's exemption eligibility . . . ." *Id.*

On the above set of facts, the Ninth Circuit affirmed the district court's denial of the plaintiff's motion for class certification. The district court did not abuse its discretion in holding that "analysis of the outside salesperson exemption precluded certification because that analysis would require an individualized inquiry into the manner in which each HLC actually carried out his or her work, and that this burden was not lessened by the presence of other issues susceptible to common proof." *Id.* at 944 (citing to the district court order). In contrast to the bright line *Wang* rule adopted by this court, the Ninth Circuit "favor[s] an approach that takes into consideration all factors that militate in favor of, or against, class certification." *Id.* at 946. Denial of certification was appropriate in *Vinole* because "[p]laintiffs' claims will require inquiries into how much time each individual HLC spent in or out of the office and how the HLC performed his or her job; all of this where the HLC was granted almost unfettered autonomy to do his or her job." *Id.* at 947. Trial would unavoidably require the court to conduct "several hundred mini-trials

with respect to each HLC's actual work performance." *Id.* Accordingly, the district court properly denied class certification.

■■■ Three principles that can be gleaned from *In re Wells Fargo* and *Vinole* prove fatal to the instant plaintiff's renewed motion for class certification. Firstly, under both decisions, an employer's uniform exemption policy is only one of many factors that must to be taken into account in the predominance analysis. Secondly, if an employer asserts an exemption as a defense and the inquiry into whether the individual class members qualify for that exemption is fact-intensive, the district court must weigh the complexity of that inquiry in the predominance calculus. Finally, when an employer asserts an exemption as a defense, such as the outside sales exemption, the resolution of which depends upon how employees spend their time at work, unless plaintiff proposes some form of common proof, such as a standard policy governing how and where employees perform their jobs, common issues of law or fact are unlikely to predominate.

■■■ In light of these principles, the court cannot see and plaintiff has not presented any viable method for certifying this action as a class action. To be certain, there are a number of common issues in this case. Wells Fargo does not dispute that all HMCs were uniformly classified as exempt. All class members had common job descriptions, uniform training, the same primary goal (to sell mortgages), uniform job expectations, similar compensation plans, and standardized employee evaluation standards. The record before the court indicates that all HMCs operated without supervision. However, this court has already held that analysis of five of the seven exemptions asserted by Wells Fargo would require fact-intensive inquiries into how individual HMCs performed their job. Under *In re Wells Fargo* and *Vinole,* the complexity of those inquiries must factor into this court's predominance analysis. *In re Wells Fargo* and *Vinole* also make clear that a plaintiff could satisfy the predominance requirement by coming forward with some form of common proof that would absolve this court from inquiring into how each HMC spent their working day. Plaintiff has not, however, done so. She has not produced (or even alleged the existence of) any policy that

requires HMCs to spend a specified amount of time in or out of the office. At the very least, to determine if each HMC qualified for the outside sales exemption the court would need to conduct "inquiries into how much time each individual [HMC] spent in or out of the office and how the [HMC] performed his or her job; all of this where the [HMC] was granted almost unfettered autonomy to do his or her job." *Vinole,* 571 F.3d at 947. Those inquiries would inevitably consume the majority of a trial, and overwhelm the adjudication of common issues.

■■■ Plaintiff comes forward with two forms of common proof that she suggests could avoid individual inquiries into how HMCs spent their work days. Firstly, plaintiff points to the Uniform Residential Loan Application ("Form 1003"). For each loan that an HMC facilitates, the borrower is required by federal law to complete, with the assistance of the HMC, a copy of Form 1003. Among the information that the borrower must include is whether the loan application was taken face to face or by mail, telephone, or internet. Plaintiff suggests that "if 'mail,' 'telephone' or 'internet' are consistently checked, the surrounding sales activity was not done in the field." Docket No. 305 (Renewed Mot. for Class Certification ("Renewed Mot.")) at 27–28. Plaintiff admits that the "completed Form 1003s are not completely definitive, but can be a very helpful objective tool." *Id.* at 28. In arguing for reliance on Form 1003, plaintiff fails to acknowledge its myriad shortcomings as a form of common proof in this case. First, the prevalence of cell phones and cell phones with internet access means that simply because an HMC collected a loan application by telephone or the internet does not establish that they were in the office when they did so. Second, even if the court assumed that all mail, phone and internet applications were taken at a Wells Fargo office, there is no evidence regarding what percentage of an HMC's job duties involved the accepting of loan applications or that the percentage was the same for all HMCs. Because Form 1003 has so little to say about *where* an HMC undertook his or her work, it falls well short as an acceptable form of common proof.

Secondly, plaintiff argues that individualized inquiries could be averted by using random sampling of class members to determine whether the class, as a whole, qualified for any of the asserted exemptions. Through this random sampling, plaintiff asserts, the court could arrive at some "average" for purposes of liability. "An example would be: The Court finds that out of thirty testifying HMCs, twenty-seven were non exempt and, of those, an average of eight hours of overtime per week were worked.'" Renewed Mot. at 29. Plaintiff then claims, without providing sufficient detail, that "[t]here are several ways to extrapolate that finding to all other members or all members who submit proofs of claim." *Id.* at 29. In so arguing, plaintiff has inadvertently undermined their own arguments for the predominance of common issues. Assume that the court permitted proof through random sampling of class members, and that the data, in fact, indicated that one out of every ten HMCs is exempt. How would the finder of fact accurately separate the one exempt HMC from the nine nonexempt HMCs without resorting to individual mini-trials? Plaintiff has not identified a single case in which a court certified an overbroad class that included both injured and uninjured parties. *See In re Neurontin Mktg. and Sale Practices Litig.,* 244 F.R.D. 89, 114 (D.Mass.2007) (finding that a plaintiff's inability to propose a method for separating the injured from the uninjured precluded class certification). Nor does plaintiff appear to recognize that representative testimony is typically only allowed in the unpaid overtime context to establish the number of hours employees worked and the amount they were paid, not whether a class of employees was exempt from the overtime laws' coverage. *See Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1278–79 (11th Cir.2008). In fact, the court has been unable to locate any case in which a court permitted a plaintiff to establish the non-exempt status of class members, especially with respect to the outside sales exemption, through statistical evidence or representative testimony. The plaintiff's claims in this action, especially with respect to the outside sales exemption, "require a fact-intensive, individual analysis of each employee's exempt status." *Vinole,* 571 F.3d at 947. Although "the decision to use [statistical sampling] tools is within the discretion of the district court," in this case, they would be of extremely limited help to resolving the key issues. *Id.*[2]

None of the plaintiff's other arguments come close to persuading the court that plaintiff has met her burden. Firstly, it appears that plaintiff fundamentally misunderstands the purpose of the predominance requirement. Plaintiff argues that because defendant, at trial, has the burden of proving that class members qualified for one of the asserted exemptions, plaintiff is somehow freed from meeting the predominance requirement with respect to those defenses. Such a view is directly at odds with the way the Ninth Circuit has interpreted Rule 23(b)(3). The important inquiry is not whether common issues predominate with respect to plaintiff's prima facie case, but rather will common issues predominate in the entire litigation. *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001) ("If the main issues in a case require the separate adjudication of each class member's individual claim or *defense,* a Rule 23(b)(3) action would be inappropriate.") (emphasis added). Simply because the plaintiff may be able to establish the prima facie case using some form of common proof does not mean that defendant is limited to common proof when asserting relevant defenses. Thus, if the adjudication of a defense for which the defendant has the burden of proof would necessitate individual inquiries, and those inquiries would predominate over inquiries into common questions, certification should be denied. This is clearly the case here, as the applicability of the outside sales exemption can only be resolved through an

---

**2.** Had plaintiff provided the court with a statistical report in support of her motion, this analysis may have been different. Plaintiff did not, however, and asks this court to certify the class based on abstract statements about what statistical sampling might be able to establish. This litigation is over four years old. Even assuming that most discovery related to this case was stayed pending the resolution of the appeal, plaintiff has had ample time to hire a statistical expert, conduct some random sampling and present the findings to the court.

examination of how each class member spent his or-her working day.

Secondly, plaintiff asserts that there is a single common question at issue in this case that is easily resolved with common proof: "What is the primary duty of the HMCs?" Renewed Mot. at 7. Plaintiff contend that all HMCs had the same primary job duty. They further claim that identifying their primary job function is the only real issue in this case in light of Wells Fargo's conflicting exemption claims. For example, plaintiff avers that if, as Wells Fargo claims, the HMCs qualify for the administrative exemption, they cannot also qualify for the outside sales exemption or the commissioned sales exemption. Thus, because resolving the applicability of the exemptions will entail identifying the HMCs' primary job duty, which is the same across the class, common issues will predominate. Although there is some inherent logic to plaintiff's argument, plaintiff again misses the point of the predominance requirement. Plaintiff assumes that in practice all HMCs have the same primary job duty. Such a conclusion is not necessarily warranted by the current record in this case. More importantly, not all of Wells Fargo's claimed exemptions hinge on the HMCs' job function. The applicability of the outside sales exemption, which poses the greatest problem from a predominance perspective, has nothing to do with what an employee does; it focuses solely on where an employee completes his or her work. As a result, plaintiff's attempt to recast the focus of this case in a manner more amenable to class treatment is unavailing.

Thirdly, plaintiff asks this court to revisit its acceptance of declarations submitted by current HMCs in support of Wells Fargo's opposition to the motion for class certification. Plaintiff again argues that the declarations are "untrustworthy" and "vague and inconclusive." Renewed Mot. at 25–26. The court has already ruled on this issue. While recognizing that the declarations of current employees, who may fear for their jobs if they do not comply with their employer's wishes, are "inherently suspect," *see In re Wells Fargo*, 2007 WL 3045995, at *5, the court's decision regarding predominance was and is not dependent upon the content of those declarations. Plaintiff's argument does not alter the court's decision.

In sum, the various theories of the case put forward by the parties combined with the current state of the record lead to a single conclusion: In order to adjudicate Wells Fargo's exemption defenses, especially the outside sales person exemption, a substantial quantity of individual inquiries will be necessary. Although there are some issues in this case amenable to common proof, individual inquiries will predominate over common questions. Accordingly, plaintiff cannot meet the predominance requirement of Rule 23(b)(3), and plaintiff's renewed motion to for class certification is DENIED.[3]

b. *Superiority*

Because the court holds that plaintiff has not satisfied the predominance requirement, it need not address the superiority requirement. However, the court notes that had plaintiff come forward with a tenable method for trying this case that avoided extensive individual mini-trials, it is likely that plaintiff would have been able to satisfy the superiority requirement. It is not ideal for the court or the parties that plaintiff and class members, if they seek to continue with this litigation, must proceed on a case-by-case basis. At the same time, given the plaintiff's predominance problems, the court simply cannot

---

3. At the hearing on this renewed motion, counsel representing the nationwide class of HMCs suggested that, were the court to hold that, as a matter of law, certain exemptions did not apply in this case, the individualized inquiries that are of greatest concern to the court—the inquiries related to the exemptions asserted by Wells Fargo—would disappear. Counsel is correct that the court has not yet definitively held, on the merits, that the exemptions apply in this action. If, at a later stage of this litigation, the court were to hold that some or all of the exemptions do not apply, the court may permit plaintiff to file a motion for leave to file a third motion for class certification. On the current record and given the state of the law, however, it appears likely that at least the federal and California outside sales exemption will apply in this action. *See In re Wells Fargo*, 2007 WL 3045995, at *7–8. The court has already discussed the case-by-case inquiries that would be necessary to resolve those exemptions for each HMC. Accordingly, it is not appropriate to certify a class action at this time.

certify a class. Any trial would be consumed by individualized inquiries into how each class member spent his or her day, making a class action no better than numerous individual actions.

*CONCLUSION*

For the reasons stated, plaintiff's renewed motion for class certification is DENIED.

IT IS SO ORDERED.