**Gabe BEAUPERTHUY,**
**et al., Plaintiffs,**

v.

**24 HOUR FITNESS USA, INC., a California corporation dba 24 Hour Fitness; Sport and Fitness Clubs of America, Inc., a California corporation dba 24 Hour Fitness, Defendants.**

**Case No. 06–715 SC.**

United States District Court,
N.D. California.

Feb. 24, 2011.

Jennifer Lee Jonak, William M. Lukens, Lukens Law Group, San Francisco, CA, Justin Potter Karczag, Thomas G. Foley, Jr., Foley Bezek Behle & Curtis, LLP, Santa Barbara Office, Santa Barbara, CA, Richard E. Donahoo, Thomas John Welch, Donahoo & Associates, Tustin, CA, Ste-

phanie Rae Hanning, Foley Bezek Behle and Curtis, Costa Mesa, CA, for Plaintiffs.

Henry D. Lederman, Allison A. Ross, Lisa Chagala, Littler Mendelson A Professional Corporation, Walnut Creek, CA, Sarah Rebecca Nichols, Ogletree Deakins Nash Smoak & Stewart, Bethany Anne Vasquez, Garry G. Mathiason, John C. Kloosterman, Laura Emily Hayward, Littler Mendelson, P.C., James Y. Wu, Lewis Brisbois Bisgaard & Smith LLP, San Francisco, CA, for Defendants.

## ORDER RE: MOTIONS TO DE-CERTIFY CONDITIONAL FLSA CLASSES

SAMUEL CONTI, District Judge.

### I. *INTRODUCTION*

This is a collective action filed by employees and former employees of Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc. (collectively "24 Hour" or "Defendants"). Before the Court are two Motions to Decertify Conditional Fair Labor Standards Act Classes, both filed by Defendants. Defendants' first Motion seeks to decertify a class of employees and former employees who worked as personal trainers for Defendants ("Trainer Class"). Docket No. 362 ("Defs.' First Mot."). Defendants' second Motion seeks to decertify a class of employees and former employees who worked as managers for Defendants ("Manager Class"). Docket No. 371 ("Defs.' Second Mot."). Plaintiffs have filed an Opposition to each Motion. Docket Nos. 385 ("Pl.'s First Opp'n"), 386 ("Pl.'s Second Opp'n"). Defendants have filed Replies. Docket Nos. 409 ("Defs.' First Reply"), 410 ("Defs.' Second Reply").

In addition, Plaintiffs have filed two Motions to Strike ("MTS") Declarations Filed in Support of Defendants' Decertification Motions. In their first Motion to Strike, Plaintiffs move to strike the declarations of six witnesses filed in support of Defendants' Motion to Decertify the Trainer Class. Docket No. 403 ("Pl.'s First MTS"). In their second Motion to Strike, Plaintiffs seek to strike the declarations of two witnesses filed in support Defendants' Motion to Decertify the Manager Class. Docket No. 405 ("Pl.'s Second MTS"). Defendants have submitted a single consolidated Opposition in response to both motions. Docket No. 412 ("Defs.' Cons. MTS Opp'n"). Plaintiffs have filed a single consolidated Reply. Docket No. 420 ("Pl.'s Cons. MTS Reply").

Lastly, Defendants have filed a Motion to Strike all declarations filed in support of Plaintiffs' Oppositions to Defendants' Decertification Motions. Docket No. 414 ("Defs.' MTS"). Plaintiffs filed an Opposition. Docket No. 416 ("Pl.'s Opp'n to Defs.' MTS"). Defendants replied. Docket No. 419 ("Defs.' MTS Reply").

Having considered all of the papers submitted by both parties, this Court concludes that the matter is appropriate for decision without oral argument. As detailed below, the Court concludes that decertification of both the Trainer Class and the Manager Class is warranted.

### II. *BACKGROUND*

The Court has previously issued several orders that detail the procedural and factual background in this dispute. *See* Docket Nos. 26 ("Apr. 11, 2006 Order"), 66 ("Nov. 28, 2006 Order"), 124 ("Mar. 6, 2007 Order"), 190 ("Mar. 24, 2008 Order"). This Order will therefore assume familiarity with the background of this case. In short, Plaintiffs are alleging that Defendants' employment and payment policies improperly denied Plaintiffs overtime payments, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). *See* First Am. Compl. ("FAC"), Docket No. 33, ¶¶ 85–97. Prior to discovery, the Court granted conditional

certification of the Manager Class and the Trainer Class in accordance with the two-stage FLSA certification process described below. *See* Mar. 24, 2008 Order; Mar. 6, 2007 Order.

The present motions arise after the close of non-expert discovery. Pl.'s First Opp'n at 4. Defendants have produced over 200,000 documents, including payroll records for each Plaintiff. *Id.* Defendants deposed forty class members. Defs.' First Reply at 2. Plaintiffs deposed ten 24 Hour witnesses. Pl.'s First Opp'n at 4. Both sides have disclosed experts and produced damages computations. *Id.* Plaintiffs have submitted declarations from 119 class members—the forty deponents plus seventy-nine others.

### III. *LEGAL STANDARD*

■ The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Section 16(b) of the FLSA provides employees with a private right of action to sue an employer for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The latter sort of action, often referred to as a "collective action," works somewhat differently than a Rule 23 class action: an employee who wishes to join an FLSA collective action must affirmatively opt-in by filing a written consent to join in the court where the action was brought. *Id.* In *Hoffmann–La Roche Inc. v. Sperling*, the Supreme Court recognized the discretion of district courts to facilitate the process by which

potential plaintiffs are notified of FLSA collective actions into which they may be able to opt. 493 U.S. 165, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989).[1] Building on this, a majority of courts, including district courts in the Ninth Circuit, have adopted a two-stage certification procedure. *See, e.g., Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004); *Wynn v. National Broadcasting Co.*, 234 F.Supp.2d 1067, 1082–84 (C.D.Cal.2002); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir.2001). At the first stage, the district court approves conditional certification upon a minimal showing that the members of the proposed class are "similarly situated"; at the second stage, usually initiated by a motion to decertify, the court engages in a more searching review. *Leuthold*, 224 F.R.D. at 467.

■ The FLSA does not define "similarly situated," and the Ninth Circuit has not spoken to the issue. *Reed v. County of Orange*, 266 F.R.D. 446, 449 (C.D.Cal. 2010) ("The FLSA does not define the term 'similarly situated,' and there is no Ninth Circuit precedent interpreting the term.") (citations omitted). The Supreme Court, in *Sperling*, also left the term undefined, but indicated that a proper collective action encourages judicial efficiency by addressing, in a single proceeding, claims of multiple plaintiffs who share "common issues of law and fact arising from the same alleged [prohibited] activity." 493 U.S. at 486, 110 S.Ct. 803. This has been distilled by courts into a lenient standard for step one—the conditional certification stage—requiring "nothing more than substantial allegations that putative class members were together victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at

---

1. *Sperling* addressed a collective action brought under the Age Discrimination in Employment Act, which, the Court recognized, incorporates § 16(b) of the FLSA. 493 U.S. at 486, 110 S.Ct. 803.

1102 (internal quotations omitted); *see also, e.g., Gerlach v. Wells Fargo & Co.*, No. C 05–0585, 2006 WL 824652, at *2 (N.D.Cal. Mar. 28, 2006). This Court applied the lenient stage-one standard when it previously certified the conditional Trainer Class and Manager Class. *See* Mar. 24, 2008 Order; Mar. 6, 2007 Order. At step two of the process, where this case currently stands, courts engage in a more searching review. *Leuthold*, 224 F.R.D. at 467. At this stage, in order to overcome a motion to decertify a conditionally certified class, "it is plaintiffs' burden to provide substantial evidence to demonstrate that they are similarly situated." *Reed*, 266 F.R.D. 446 at 449. The Eleventh Circuit has noted that at this second stage, "[l]ogically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson v. Cagle*, 488 F.3d 945 (11th Cir.2007).

■■■■ In deciding whether plaintiffs have met their stage-two burden, courts weigh various factors that require a fact-specific inquiry. *Reed*, 266 F.R.D. 446 at 449. These factors include: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Id.* Courts in this circuit have found that certification is not warranted in the absence of proof that plaintiffs' alleged injuries resulted from a single, unified policy. *Id.* (citing *Smith v. T–Mobile USA, Inc.*, No. 05–5274 ABC (SSx), 2007 WL 2385131, *2–3, 2007 U.S. Dist. LEXIS 60729, at *6–8 (C.D.Cal. Aug. 15, 2007); *Castle v. Wells Fargo Fin., Inc.*, No. C–06–4347–SI, 2008 WL 495705, at *1–2, 2008 U.S. Dist. LEXIS 106703, at *5 (N.D.Cal. Feb. 20, 2008)). Nevertheless, courts have emphasized that Plaintiffs "must only be similarly—not identically—situated to proceed collectively." *Falcon v. Starbucks*, 580 F.Supp.2d

528, 534 (S.D.Tex.2008). Ultimately, "the decision whether to proceed as a collective or class action turns on whether this device is the superior way of resolving a controversy. The benefits to the parties of a collective proceeding need to be balanced against any prejudice to [the defendant] and any problems of judicial administration that may surface." *Campanelli v. The Hershey Co.*, 2010 WL 3219501 at *5, 2010 U.S. Dist. LEXIS 92364 at *14 (N.D.Cal. Aug. 13, 2010) (citation omitted). The decision whether to decertify a collective action is within the district court's discretion. *See, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995) ("[T]he district court's application of the [legal] standard must be reviewed for abuse of discretion."); *Pendlebury v. Starbucks Coffee Co.*, 518 F.Supp.2d 1345, 1348–49 (S.D.Fla.2007).

## IV. *DISCUSSION*

### A. *Motions to Strike*

Plaintiffs filed their two MTS on November 12, 2010. *See* Pl.'s First MTS; Pl.'s Second MTS. In their First MTS, Plaintiffs argue that the declarations of six witnesses filed in support of Defendants' Motion to Decertify the Trainer Class should be stricken because Defendants allegedly failed to disclose the identities of the witnesses during discovery as required by Federal Rule of Civil Procedure 26. Pl.'s First MTS at 1. Plaintiffs also contend that the declarations by three of these witnesses lack foundation and are irrelevant because the witnesses were employed in California, while the Trainer Class is limited to employees who worked outside of California. *Id.* at 1 n. 1. In their Second MTS, Plaintiffs argue that the declarations of two witnesses—Marla Loar and Julius Soriano—filed in support of Defendants' Motion to Decertify the Manager Class should be stricken, again because

Defendants allegedly failed to disclose the witnesses' identities during discovery. Pl.'s Second MTS at 1. In their consolidated Opposition to Plaintiffs' motions, Defendants argue that they disclosed the names of nearly all of the witnesses at issue during discovery. Defs.' Cons. MTS Opp'n at 1. They further contend that some of the declarations merely authenticate documents made known to Plaintiffs during discovery. Thus, according to Defendants, any failure to disclose was justified and harmless. *Id.*

On December 6, 2010, Defendants countered with their own MTS all declarations filed in support of Plaintiffs' Oppositions to Defendants' Motions to Decertify. *See* Defs.' MTS. Defendants argue that several of the 119 declarations filed by Plaintiffs contain statements that contradict the declarants' prior deposition or declaration testimony. *Id.* at 1. Defendants therefore contend that "all of the declarations are suspect and entitled to no weight whatsoever." *Id.* In response, Plaintiffs argue that none of the declarants' statements contradict their prior testimony. Pl.'s Opp'n to Defs' MTS at 1. Plaintiffs also note that Defendants' MTS is procedurally improper because it violates Local Rule 7–3(c), which requires that "any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." *Id.* at 1; Civ. L.R. 7–3(c). Defendants note in reply that Plaintiffs'

two MTS also violate Local Rule 7–3. Defs.' MTS Reply at 2.

■ Local Rule 7–3(b) requires evidentiary and procedural objections to a motion to be contained within the opposition brief, which is limited to twenty-five pages in length. Civ. L.R. 7–3(b). Similarly, Local Rule 7–3(c) requires evidentiary and procedural objections to an opposition to be contained within the reply brief, which is limited to fifteen pages in length. Civ. L.R. 7–3(c). The Court finds that Plaintiffs' two MTS violate Local Rule 7–3(b) and Defendants' MTS violates Local Rule 7–3(c). Both parties have attempted to evade the briefing page limits by filing MTS instead of fully voicing their evidentiary and procedural objections in their opposition and reply briefs as required by the Local Rules. Accordingly, the Court DENIES all MTS and will only address the evidentiary arguments to the extent they are raised in the parties' briefs.[2]

## B. *Evidentiary Objections Properly Raised in the Briefs*

In their First Opposition, Plaintiffs raise objections "pursuant to FRCP 37" to the declarations of Jeremy Smith, Josh Morehouse, JP McFarland, Butch Cooper, and Sam Kader (Docket Nos. 363, 364, 365, 366, and 367, respectively). Pl.'s First Opp'n at 24. They contend that these witnesses were not disclosed in discovery.

---

**2.** The Court is not persuaded by Plaintiffs' argument that, while Defendants' MTS is evidentiary in nature and therefore improper under the Local Rules, Plaintiffs' MTS was proper because it was "based primarily upon a self-executing Federal Rule of Civil Procedure for a discovery/disclosure violation." Pl.'s Opp'n to Defs.' MTS at 2. Rather, the Court agrees with Defendants that Plaintiffs seek to selectively apply the Local Rules to their advantage. Defs.' MTS Reply at 2. The Court notes that Plaintiffs' First MTS contains evidentiary arguments asserting that certain witnesses lacked foundation for their testimo-

ny. Pl.'s First MTS at 3. Moreover, some of the arguments that Plaintiffs now contend are not evidentiary in nature were contained in Plaintiff's Opposition brief under the heading "Evidentiary Objections." Pl.'s First Opp'n at 24. Lastly, the Court notes that Local Rule 7–3 provides that evidentiary *and procedural* objections must be contained within the opposition brief. Both of Plaintiffs' MTS are at least procedural in nature, as they argue that Defendants failed to disclose witnesses in violation of Fed. Rule of Civ. Proc. 26. As such, Plaintiffs' MTS, like Defendants' MTS, are in violation of the Local Rules.

They also object to the declarations of Smith, Kader, and Cooper on the grounds of foundation and relevance, arguing that these witnesses have no non-California experience or knowledge.

Plaintiffs' argument that the declarations lack relevance and foundation is not persuasive. The crux of Plaintiffs' allegations is that 24 Hour denied trainers overtime pursuant to a company-wide policy that was the same at every club. Testimony of witnesses who worked at clubs in California is undeniably relevant to whether such a company-wide policy existed. However, Plaintiffs' objection to the declarations on the grounds that the witnesses' names were not disclosed during discovery is SUSTAINED. The declarations of witnesses Smith, Morehouse, McFarland, Cooper, and Kader are accordingly stricken.[3]

In their Second Opposition, Plaintiffs raise a number of evidentiary objections buried in a lengthy footnote on the last page of their brief, with the footnote text smaller than the 12–point type required by Civil Local Rule 3–4(c)(2). Pl.'s Second Opp'n at 25 n. 21.

First, Plaintiffs object to the declaration of Julius Soriano and attached exhibits (Docket No. 375) on the grounds that Soriano was not disclosed as a witness during discovery. Soriano's declaration merely authenticates payroll records and W–2 forms that Plaintiffs already knew existed. Both parties listed W–2 forms and payroll records in their initial disclosures. The Court finds that the failure to disclose Soriano is harmless and striking his testimony is thus not warranted under Fed. Rule of Civ. Proc. 37(c)(1). Accordingly, this objection is OVERRULED.

Second, Plaintiffs object to the declaration of Marla Loar and attached exhibits (Docket No. 372) filed in support of Defendants' Motion to Decertify the Manager Class.[4] Plaintiffs argue that Loar's testimony states only that the exhibits are "several versions and/or drafts" of employee job descriptions with no foundation for determining which are drafts and which were actually implemented. This objection is SUSTAINED. The declaration of Marla Loar (Docket No. 372) is hereby stricken.

Lastly, Plaintiffs object to the declaration of Scott White (Docket No. 374) filed in support of Defendants' Motion to Decertify the Manager Class[5] on the grounds that White has only been employed since 2008 and testified that he has no knowledge of 24 Hour operations prior to March 2008. His declaration attempts to authenticate compensation plans for managers prior to 2008. This objection is SUSTAINED on the grounds that White's testimony lacks foundation. The declaration of Scott White (Docket No. 374) is hereby stricken.

3. The Court is not persuaded by Defendants' argument that including the names and addresses of McFarland and Morehouse among a list of over 16,000 names of potential class members satisfies the supplemental disclosure requirements of Fed. Rule Civ. Proc. 26(e). *See* Defendants' First Reply at 5 n. 2.

4. Defendants also submitted a declaration by Marla Loar in support of their Motion to Decertify the *Trainer* Class. Loar Decl. Docket No. 369. Plaintiffs' Opposition to that motion did not object to Loar's declaration. Accordingly, Loar's declaration supporting the Motion to Decertify the *Trainer* Class is not excluded.

5. As was the case with Marla Loar, Defendants also submitted a declaration by Scott White in support of their Motion to Decertify the *Trainer* Class. Docket No. 370. Plaintiffs' Opposition to that motion did not object to White's declaration. Accordingly, White's declaration in support of the Motion to Decertify the *Trainer* Class is not excluded.

## C. *Defendants' Motion to Decertify the Trainer Class*

The conditionally certified trainer class is comprised of 772 employees and former employees who worked at hundreds of different 24 Hour Fitness clubs outside of California and who held any of fifteen different job titles involving a personal training component.[6] Defs.' First Mot. at 5; Mar. 24, 2008 Order at 15. The relevant class period is October 29, 1999 to November 10, 2008. Defs.' First Mot. at 4; Pl.'s First Opp'n at 8 n. 4.

Plaintiffs' underlying claims allege that the members of the Trainer Class were classified as "non-exempt" hourly employees, but that 24 Hour Fitness failed to compensate them for any hours they worked in excess of 40 hours per week and did not pay any overtime premium. *See* Mar. 24, 2008 Order; Pl.'s First Opp'n at 2. In other words, Plaintiffs contend that the trainers were forced to perform "off-the-clock" tasks for which they should have, but did not, receive overtime compensation. Pl.'s First Opp'n at 2. Plaintiffs claim that this violated the FLSA, which requires overtime compensation for time worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1).

Plaintiffs argue that 24 Hour deprived trainers of overtime in three distinct ways. *Id.* First, Plaintiffs contend that trainers were not paid for all of the personal training-related hours, or "session hours" they worked.[7] They argue that 24 Hour's timekeeping system did not allow them to record all of the session hours they worked,

which prevented them from getting paid for all of the time spent performing those personal training-related tasks. *Id.* at 2, 9. More specifically, they contend that trainers recorded session hours in one system, known as GMS, and FIT hours in another system. *Id.* According to Plaintiffs, the GMS system did not allow trainers to record the actual start and stop time of their session-related work. *Id.* Instead, the system automatically "presumed" that one hour's worth of work was performed for each training session, when in fact, the session-related tasks trainers had to perform often required more than one hour to accomplish. *Id.*

Second, Plaintiffs contend that trainers were not paid for all of the non-session related hours, or "FIT" hours, they worked. *Id.* at 2. Plaintiffs allege that the number of FIT hours each trainer was allowed to record was determined not by how many FIT hours he or she actually worked, but rather by a strict quota of FIT hours allocated to each particular club by district-level managers. Pl.'s First Opp'n at 2, 9.

Third, Plaintiffs contend that, prior to 2003, 24 Hour did not include session hours in its calculation of hours for overtime eligibility. *Id.*; *See also* Docket No. 297 ("Pl.'s Motion for Summary Judgment" at 1). Plaintiffs further contend that, during the entire class period, when 24 Hour did pay trainers overtime, it included the overtime payments in the trainers' subsequent paycheck instead of issuing the payments on their regular payday.

---

**6.** The class includes the job titles of PT Trainer, Certified Personal Trainer ("CPT"), CPT I, CPT II, CPT III, CPT Elite, Trainer Fit Pro ("TFP"), TFP I, TFP II, TFP III, TFP Elite, FLS, Apex Tech, Fitness Instructor, and Floor Instructor. *See* Mar. 24, 2008 Order at 15.

**7.** The parties agree that the hours trainers worked were divided into two separate categories: (1) "session hours," which included

time spent training clients and performing other session-related activities such as client intake, creating nutrition plans, or performing body measurements; and (2) "FIT hours," which included time spent performing all other duties, such as racking weights, cleaning, and attending meetings. Defs.' First Mot. at 6–7; Pl.'s First Opp'n at 2. Trainers were paid a higher rate for session hours than for FIT hours. *Id.*

*Id.* Plaintiffs claim that this violated the provisions of 29 C.F.R. § 778.106, which require that overtime compensation be paid on the employees' "regular payday." *Id.*

In opposition to the instant motions for decertification, Plaintiffs argue that they have provided substantial evidence demonstrating that all class members were similarly situated, and that proceeding with a collective action to try their claims is therefore proper. Pl.'s First Opp'n at 2.

Defendants argue for decertification on the grounds that Plaintiffs have failed to identify a company-wide decision, policy, or plan common to all putative class members relating to how trainers were paid for time worked. Defs.' First Mot. at 2. They argue that: (1) any alleged off-the-clock work was a function of an individual trainer's unique circumstances, such as his or her job title and experience level and the practices of the club managers at the particular club where he or she worked; (2) Plaintiffs recorded their hours via different timekeeping systems and were paid according to different compensation plans over the course of the class period—in particular, the dual timekeeping system of which Plaintiffs complain was only used until 2003 and thus impacted only some class members; (3) some or all trainers, during some or all periods of their employment, were exempt from FLSA overtime requirements based on the "commissioned retail sales exemption" set forth in § 7(i) of the FLSA, 29 U.S.C. § 207(i); and (4) fairness dictates decertification because collective treatment would deprive 24 Hour of due process. Defs.' First Mot. at 2–3.

### 1. *Disparate Factual and Employment Settings of the Individual Class Members*

▬▬ When determining whether a plaintiff has met its burden of producing substantial evidence to show that putative class members are similarly situated, the first factor courts consider is the degree of similarity among plaintiffs' factual and employment settings. *See, e.g., Reed,* 266 F.R.D. at 449. When conducting this inquiry, courts consider such factors as whether plaintiffs had differing job titles or duties, worked in different geographic locations, worked under different supervisors, or allege different types of violative conduct. *Id.* (noting, "[d]ecertification is appropriate where plaintiffs are subject to varying work conditions in different work locations or under different supervisors"); *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409 (W.D.Pa.2000) ("The first factor assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary."); *Molina v. First Line Solutions LLC,* 566 F.Supp.2d 770, 787 (N.D.Ill.2007) (considering "whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decision makers, or allege different types of violative conduct"). Courts in several circuits, including this one, also evaluate whether plaintiffs have provided substantial evidence that their claims arise out of a single policy, custom or practice that led to FLSA violations. *Reed,* 266 F.R.D. 446 at 450.

#### a. *Job Titles and Duties*

▬▬ The Trainer Class includes persons who held fifteen different job titles over a ten-year period. Plaintiffs contend that, despite this variance, all putative class members shared the same primary job duties. Pl.'s First Opp'n at 7. They assert that all trainers (1) physically exercised clients; (2) performed other session-related activities such as documenting medical and food histories and body measurements, developing nutrition plans, and following up with clients; and (3) performed non-training related duties, such as

sales, re-racking weights, and cleaning. *Id.*

However, testimony of class members shows that the job duties of trainers varied somewhat depending on factors such as each trainer's job title, the time period during which he or she worked, and the certification levels he or she had earned. Deposition testimony of Plaintiff Dennis Sciacca shows that not all job titles encompassed by the Trainer Class were actually permitted to train clients. Sciacca testified that trainers who held the title of "Floor Instructor" were not permitted to train clients at all. Kloosterman Decl. ¶ 24, Exh. 19 (Sciacca Dep. 29:1–8) (stating "a floor instructor is not allowed to conduct personal training sessions").[8] Thus, the duties of some Plaintiffs were dramatically different from the duties of others, as they did not include physically exercising clients or performing other session-related tasks at all.

Moreover, the duties trainers were required to perform varied over the course of the ten-year claims period. Twenty–Four Hour repeatedly changed the types of personal training programs it offered between 1999 and 2008. Lyon Decl. ¶¶ 7–9.[9] For example, prior to 1999, the training programs offered by 24 Hour did not include any nutritional component. *Id.* Then, from 1999 to 2004, 24 Hour offered some personal training programs that did include a nutritional component and others that did not. *Id.* During this five-year period, only trainers who had earned a particular certification were allowed to service clients who wanted their personal training sessions to include a nutritional component. Kloosterman Decl. ¶ 24, Exh.

19 (Sciacca Dep. 33:16–34:2). Thus, prior to 2004 the duties of some Plaintiffs did not include documenting food histories and developing nutrition plans. Trainers who did not work for the company when nutrition plans were offered, or whose clients did not opt for those plans, will be hard pressed to contend they were forced to develop nutrition plans off the clock. This is an especially significant disparity in job duties because developing nutrition plans is one of the primary session-related activities that Plaintiffs claim they were forced to perform off the clock.

The evidence thus reflects that class members shared some but not all of the same job duties. The differences in trainers' duties based on their job title, training certifications, and the types of programs offered at the time of their employment would make adjudicating Plaintiffs' off-the-clock claims with representative proof difficult but, taken alone, may not require decertification. However, when combined with the other disparate factual and employment settings and individualized defenses below, decertification becomes necessary.

### b. *Common Policy and Supervision*

"To proceed as a collective action, Plaintiffs must present substantial evidence of a common policy, plan, or scheme of permitting or requiring uncompensated off-the-clock work. An allegation of an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy or plan." *Reed*, 266 F.R.D. at 458 (internal citations omitted). Plaintiffs have failed to produce substantial evidence that they were compelled to perform off-the-clock work pursuant to

---

**8.** John Kloosterman ("Kloosterman"), attorney for Defendants, filed a declaration with accompanying exhibits in support of Defendants' Motion to Decertify the Trainer Class. ("First Kloosterman Decl."). Docket Nos. 381–384.

**9.** Josh Lyon ("Lyon"), Senior Director of Fitness for 24 Hour Fitness, submitted a declaration in support of Defendants' Motion to Decertify the Trainer Class. Docket No. 368.

a common policy, plan, or scheme. Rather, the evidence shows that 24 Hour's official policy was to pay its employees for all hours worked. While Plaintiffs offer substantial evidence that many trainers did perform off-the-clock work, the evidence indicates that the decisions of individual club-level managers, not a company-wide policy, were the causal factor.

It is uncontested that 24 Hour had an official written policy requiring all nonexempt employees to record all of their work time and providing that employees would be paid for overtime in accordance with state and federal law. The employee handbooks issued to every employee contained this policy. *See* Loar Decl., ¶¶ 2–5, Exhs. 1–4.[10] Additionally, during the years in which paper timesheets were used (until November 2003), each time sheet required employees to initial their total hours and swear to their accuracy. Kloosterman Decl. ¶ 8, Exh. 3 (Kathleen Busick Dep. 156: 18–25, Exh. 8). The timesheets warned employees against under reporting their hours. *Id.*

One of Plaintiffs' central allegations is that trainers were not paid for all of the FIT hours they worked because each club was given a quota of FIT hours it could not exceed. Pl.'s First Opp'n at 2, 9. However, testimony of multiple witnesses shows that the manner in which FIT hours were distributed amongst trainers was determined on a club-by-club basis, typically by the Fitness Manager of that club. For example, Plaintiff Lawrence Srubas testified that when he worked under Fitness Manager Tony Kuo, he was not paid for some of the FIT hours he worked, but when Kuo was replaced by Eric Hood, Srubas was paid for all of his FIT hours. Kloosterman Decl. ¶ 26, Exh. 19 (Srubas Dep. 52:5–19; 53:25–54:9). Srubas continued to be paid for all FIT hours worked under the subsequent managers who succeeded Hood. *Id.* Other class members testified that their particular club-level managers told them not to record certain hours worked, but no class member points to any company-wide policy or decision underlying the club-level manager's directions. *See* Defs.' First Mot. at 16. Indeed, Plaintiffs fail to point to any testimony stating that working off the clock was part of a company-wide policy or directive. Instead, Plaintiffs maintain that the policy of allocating a certain number of FIT hours to each club created incentives for club-level managers to make trainers work off the clock. Pl.'s First Opp'n at 14. Such allegations are insufficient to constitute evidence of a common decision, policy, or plan, especially in light of 24 Hour's formal written policies to the contrary. *See Brechler v. Qwest Communications Intl.,* 2009 WL 692329 at *3–4, 2009 U.S. Dist. LEXIS 24612 at *9 (D.Az. Mar. 17, 2009) (decertifying a class where plaintiffs did not produce evidence of a unified policy but instead "relie[d] on a subtler system of pressure and coercion that, ultimately, appears to have been backed or not by individual managers"); *Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278, 282 (N.D.Tex.2008) (finding that incentives created by allocating a certain number of work hours per week to individual stores did not constitute a single decision, policy, or plan causing putative class members to work off the clock).[11]

---

10. Marla Loar ("Loar"), Senior Director of Human Resources for 24 Hour Fitness, submitted a declaration in support of Defendants' Motion to Decertify the Trainer Class. Docket No. 369.

11. Plaintiffs rely heavily on *Falcon v. Starbucks,* 580 F.Supp.2d 528 (S.D.Tex.2008). In *Falcon,* the court certified a class of Starbucks employees who alleged that "despite the official 'time worked is time paid' policy, [Starbucks] enforced an unwritten policy of encouraging or allowing [class members] to work off the clock in order to control overtime costs." *Id.* at 532. As noted by Defen-

### c. *Method of calculating overtime*

Plaintiffs assert that all class members were subject to a "common method for calculating overtime" which violated the FLSA. Pl.'s First Opp'n at 10. They allege that 24 Hour's payroll department did not include personal training session hours when calculating hours worked for overtime eligibility, used the wrong procedure to calculate the rate of overtime pay trainers were due, and paid overtime compensation during the pay period after it was due. *Id.* However, Plaintiffs concede that, as shown by the testimony of 24 Hour designee Kathleen Busick, 24 Hour changed these practices in November of 2003. *Id.* The class period runs from October 1999 to November 2008. Thus, one of Plaintiffs' main theories of liability does not apply to nearly half of the claims period. Class members who worked after November 2003, therefore, are not similarly situated to class members who worked before November 2003 with regard to Plaintiffs' overtime calculation allegations. Certifying the Trainer Class would result in an overbroad class containing both injured and uninjured parties with regard to one of Plaintiffs' central claims. Courts are reluctant to certify such overbroad classes. *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D.Cal.2010).

### d. *Compensation plans*

Similarly, Plaintiffs admit that 24 Hour used a variety of different compensation plans over the course of the ten-year class period. Nevertheless, Plaintiffs contend that all of these plans shared the common feature of preventing trainers from recording all of their hours worked. Pl.'s First Opp'n at 10–11. Plaintiffs point to a variety of features from 24 Hour compensation plans that allegedly resulted in trainers having to perform off-the-clock work. *Id.* However, they do not specify when each of these compensation plan features was in effect, instead leaving the Court to reconstruct the timeline. *Id.*

The Court agrees with Defendants that this hodgepodge of allegations only calls attention to the fact that Plaintiffs are unable to identify a single policy, plan, or decision which required them to work off-the-clock. Defs.' First Reply at 6. Moreover, because the compensation plans have materially changed throughout the ten-year class period, a jury would need to review the specific compensation plan that governed each employee's work period in order to evaluate each class member's claims. The need for such individualized inquiries militates in favor of decertification.

In light of the above differences among the experiences of class members, the Court finds that the balance of class members' factual and employment settings—the first factor in determining whether Plaintiffs are similarly situated—weighs in favor of decertification.

### 2. *Individualized Defenses*

The second factor courts consider on decertification is whether the defendant asserts defenses that would require indi-

---

dants, however, the *Falcon* court applied a different legal standard than that used by courts in this circuit. Defs.' First Reply at 3. The *Falcon* court rejected the requirement, which courts in this circuit have adopted, that plaintiffs must show they were affected by a single, unified policy or plan in order to proceed collectively under section 216(b) of the FLSA. *Id.* at 535. Moreover, the plaintiffs in

*Falcon* all held the same job title, and the class period was only three years. Here, Plaintiffs held fifteen different job titles over a ten-year period. Indeed, Plaintiffs point to no case wherein a comparable number of plaintiffs over a comparably long class period were found to be similarly situated under FLSA § 216(b).

vidualized proof. *Reed*, 266 F.R.D. at 460. Here, Defendants argue as a key defense that some or all of the putative class members were exempt from overtime under the commissioned retail salesperson exemption set forth in FLSA § 7(i). Defs.' First Mot. at 21. Section 7(i) creates an exemption from overtime requirements for employees who work in a retail or service establishment if: (1) the employee's regular rate of pay during a workweek exceeds one and one-half times the minimum wage; and (2) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services. 29 U.S.C. § 207(i).

Courts have noted that § 7(i) is "a highly individualized defense because its application requires week-by-week and other periodic calculations ... specific to each individual Plaintiff and his or her particular circumstances." *Johnson v. TGF Precision Haircutters, Inc.*, 2005 WL 1994286 at *6, 2005 U.S. Dist. LEXIS 44259 at *27 (S.D.Tex. Aug. 17, 2005) (noting that "the § 7(i) defense weighs heavily in favor of decertification"). The FLSA takes a single workweek as its standard in determining the applicability of the exemption. 29 C.F.R. § 778.104. Thus, "it is ... necessary to determine the hours worked and the compensation earned by ... commissioned employees on a weekly basis." *Id.*; *Johnson*, 2005 WL 1994286 at *6 n. 16, 2005 U.S. Dist. LEXIS 44259 at *29 n. 16.

 Twenty–Four Hour's trainer compensation plan documents show that trainers earned commissions for sales of personal training sessions and/or retail supplements. White Decl. ¶ 2, Exhs. 1–11.[12] For example, the 1999 "Trainer Fit–Pro/Personal Trainer/Floor Supervisor/Floor Instructor Compensation Plan" provided that all trainers received a ten percent commission on each training session he or she sold and a ten percent commission on all nutritional supplements he or she sold. *Id.*, Exh. 1. In addition, trainers holding the title "Personal Trainer" or "Trainer Fit Pro" received a fixed percentage of the cost of each training session they conducted. *Id.* The details of the commission compensation system varied over the course of the class period. *Id.* Payroll records show that some of the putative class members received more than fifty percent of their compensation from commissions during some pay periods. Kloosterman Decl. ¶ 8, Exh. 3 (Busick Dep. 126:23–127:8, Exh. 4); Kloosterman Decl. ¶¶ 6–7, Exhs. 1 and 2 (payroll records for Plaintiffs John Davidson and Louis Ortiz).

Here, as in *Johnson*, determining whether the § 7(i) defense applies to members of the putative class would require a highly individualized inquiry and could not be accomplished by common proof. The FLSA regulations make clear that the analysis must be performed for each individual employee on a week-by-week basis. 29 C.F.R. § 778.104. Adding to the complexity in this case is the fact that trainers received various wages and various commissions depending on factors such as their experience level, certifications, and the time period during which they worked. Accordingly, "[t]he proof required to establish these individualized § 7(i) exemp-

**12.** Scott White ("White"), Senior Vice President of Total Rewards for 24 Hour filed declarations in support of both of Defendants' decertification motions. As explained in note 5, supra, his declaration filed in support of Defendants' Motion to Decertify the Manager Class is excluded for lack of foundation. His declaration in support of Defendants' Motion to Decertify the Trainer Class is not excluded, as Plaintiffs raised no objection to this declaration in their moving papers. Accordingly, all references to "White Decl." refer to the declaration filed in support of Defendants' Motion to Decertify the Trainer Class.

tion defenses would become the overwhelming focus of a trial," resulting in the equivalent of mini-trials for each Plaintiff. *Johnson,* 2005 WL 1994286 at *6, 2005 U.S. Dist. LEXIS 44259 at *28.

Plaintiffs contend that the payments Defendants refer to as commissions were not in fact bona fide commissions under § 7(i), and that the § 7(i) defense could be defeated via common proof of this fact. Pl.'s First Opp'n at 19. This argument is unavailing. The argument is premature at this stage of the case; whether plaintiffs actually meet the criteria of an FLSA exemption is irrelevant to a determination of whether they are similarly situated. *Pfohl v. Farmers Ins. Group,* 2004 U.S. Dist. LEXIS 6447 at *27 n. 5 (C.D.Cal. Mar. 1, 2004); *Pendlebury v. Starbucks,* 518 F.Supp.2d 1345, 1353 (S.D.Fla.2007) (noting, "an evaluation on the merits of the exemption is not appropriate at [the decertification stage]"). Even so, Plaintiffs' argument is unpersuasive on the merits. Plaintiffs note that in order to qualify as a commission under the § 7(i) exemption, courts have required a payment to be (1) calculated as a percentage of the sale price to the customer, and (2) de-coupled from the amount of time spent on the task for which the commission is paid. Pl.'s First Opp'n at 19 (citing *Huntley v. Bonner's, Inc.,* 2003 WL 24133000 at *3, 2003 U.S. Dist. LEXIS 26643 at *8–9 (W.D.Wash. 2003); *Yi v. Sterling Collision Ctrs., Inc.,* 480 F.3d 505, 509 (7th Cir.2007)). The compensation plans for at least some of the years encompassed by the class period appear to the Court to meet these criteria. Trainers were paid a percentage of the cost of each training package sold, a percentage of the cost of all supplements sold, and a percentage of the cost of each training session conducted. *See, e.g.,* White Decl., Ex. 1. To the extent that later compensation plans varied, this reinforces the difficulty of determining via common proof whether particular employees qualified for the exemption across a ten-year period.

### 3. *Fairness and Procedural Considerations*

"In evaluating fairness and procedural considerations, the Court must consider the primary objectives of a collective action: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Reed,* 266 F.R.D. at 458 (citing *Johnson,* 2005 WL 1994286 at *7, 2005 U.S. Dist. LEXIS 44259 at *7). However, "the Court must also determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.* In other words, "the court must balance the benefits of a reduction in the cost to individual plaintiffs and any increased judicial utility that may result from the resolution of many claims in one proceeding with the cost of any potential detriment to the defendant and the potential for judicial inefficiency that could stem from collective treatment." *Wilks v. Pep Boys,* 2006 WL 2821700 at *8, 2006 U.S. Dist. LEXIS 69537 at *26 (M.D.Tenn. Sep. 26, 2006).

Here, given Plaintiffs' varying factual and employment settings and the lack of substantial evidence that Plaintiffs were subjected to a uniform decision, policy or practice of requiring trainers to perform work off-the-clock, the jury will have to make individualized determinations as to factors such as what duties each trainer performed, what compensation plan each trainer worked under, the method of calculating overtime used by 24 Hour during each trainer's employment period, and whether each particular trainer qualified as exempt from overtime under § 7(i). The need for such individualized inquiries

would make proceeding by representative testimony impracticable. The Court is persuaded that, given the facts of this case, proceeding collectively would be "unmanageable, chaotic, and counterproductive." *Reed,* 266 F.R.D. at 462.

### 4. *Proceeding by Subclasses*

■■■ Plaintiffs suggest that any disparities among the factual circumstances of class members can be dealt with by dividing the Trainer Class into subclasses. They cite several off-the-clock cases in which courts have divided into subclasses plaintiffs whose factual circumstances vary too widely to permit them to proceed as a single class. However, Plaintiffs do not propose, and the Court cannot envision, a partition of the Trainer Class that would result in subclasses of similarly situated Plaintiffs. Plaintiffs' experiences varied across so many dimensions—the compensation plan in place during their employment; the method used to calculate overtime during their employment; their job title and certification; and the method of distributing FIT hours used at their particular club, etc.—that neatly dividing them into similarly situated subclasses would be impracticable.

### D. *Defendants' Motion to Decertify the Manager Class*

The conditionally certified Manager Class is comprised of 430 employees and former employees of 24 Hour Fitness who held the job titles of General Manager ("GM"), Operations Manager ("OM"), or Fitness Manager ("FM") outside of California.[13] Defs.' Second Mot. at 3; Mar. 6,

2007 Order at 16. The relevant class period is January 31, 1998 to July 24, 2008. *Id.*

Plaintiffs' theory of liability with regard to the Manager Class is straightforward. They allege that 24 Hour misclassified the managers as exempt from the overtime requirements of the FLSA and therefore did not pay them overtime as required by FLSA § 207(a)(1). In their Opposition to Defendants' Motion to Decertify the Manager Class, Plaintiffs argue that they have provided substantial situated with regard collective action to Second Opp'n at 2.

Defendants argue that Plaintiffs cannot meet their burden of proving that the class members are similarly situated because: (1) each of the three manager classifications has a markedly different job description and set of responsibilities; (2) deposition testimony shows that even managers with the same position had different duties and practices based on the particular club he or she worked in, the region and time period in which he or she worked, the management style and level of oversight from his or her superiors, and the manager's own level of experience and training; (3) individualized defenses apply to each manager's claims-namely, 24 Hour claims that each manager falls under one of the exemptions from overtime established by FLSA; and (4) fairness dictates decertification. Defs.' Second Mot. at 1–2.

Again, in evaluating whether decertification is warranted, the Court considers whether Plaintiffs have produced "substantial evidence to demonstrate that they are similarly situated." *Reed,* 266 F.R.D. 446

---

**13.** Twenty–Four hour divides its clubs into separate business functions, or "silos." Over time, their model has shifted from two silos: production (encompassing sales and fitness) and operations; to three silos: sales (sales of membership agreements), operations (administering club operations), and fitness (promotions of health and physical training and

sale of training packages). Generally speaking, though not always, there is one manager in each club overseeing each silo: GMs oversee sales; OMs oversee operations; and FMs oversee the promotion of health and fitness and the sale of personal training packages. Defs.' Second Mot. at 4.

at 449. We again consider: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations, noting that courts in this circuit have found that certification is not warranted in the absence of proof that plaintiffs' alleged injuries resulted from a single, unified policy. *Id.* Here, each factor weighs in favor of decertification.

### 1. *Disparate Factual and Employment Settings of the Individual Class Members*

When comparing the factual and employment settings of class members as part of a similarly situated inquiry, courts consider such factors as whether plaintiffs had differing job titles or duties, worked in different geographic locations, worked under different supervisors, or allege different types of violative conduct. *Reed,* 266 F.R.D. at 449.

Plaintiffs advance two main theories for why their factual and employment settings warrant a finding that they are similarly situated. They contend that: (1) 24 Hour admits that the class members were similarly situated; and (2) class members performed primarily nonexempt tasks while true managerial authority was vested in their superiors at the district level.

#### a. *Plaintiffs argue that 24 Hour admits class members were similarly situated*

Plaintiffs have two theories for how 24 Hour admits that members of the Manager Class were similarly situated. First, Plaintiffs argue that the deposition testimony of 24 Hour's Fed. Rule Civ. Proc. 30(b)(6) designee, Todd Bruhn, conclusively indicates that managers *within* each silo (GMs, OMs, and FMs) had the same duties and responsibilities as other managers in the same position across all clubs, regions, and states, throughout the entire claims period. Pl.'s Second Opp'n at 1.

Second, Plaintiffs argue that 24 Hour classified managers as exempt based solely upon their job title without performing any sort of individualized inquiry into each particular manager's job duties. According to Plaintiffs, this "blanket" classification policy belies Defendants' argument that individualized inquiries would be needed at trial to determine whether each individual class member was exempt from overtime. *Id.* at 6–8.

As to Plaintiffs' first theory—that Bruhn's deposition testimony is sufficient to support a finding that all class members are similarly situated—Defendants offer several persuasive rebuttals. First, Defendants note that Bruhn's testimony says nothing about the job duties of managers across silos. In other words, Bruhn's testimony is silent as to whether a GM's duties resembled those of an OM or an FM. Defs.' Second Reply at 5. Second, Defendants note that Bruhn only testified that managers within each silo "would have" or "should have" performed the same duties, not that they actually did so. *See* Karczag Decl.[14] ¶ 11, Exh. 126 (Bruhn Dep. 136:16–137:11). By contrast, Defendants point to deposition testimony, discussed below, from numerous class members suggesting that managers' job duties varied both within and across silos. In light of the testimony of actual class members as to differences among managers' job duties, both within and across silos, Defendants contend that Bruhn's testimony that managers within each silo "should

---

**14.** Justin P. Karczag ("Karczag"), attorney for Plaintiffs, filed a declaration in support of Plaintiffs' Oppositions to Defendants' Motions to Decertify the Trainer Class and the Manager Class.

have" had the same duties is not substantial evidence that all class members are similarly situated. *Id.* The Court agrees with Defendants.

■■■ Plaintiffs' deposition testimony shows that the job duties of managers varied significantly across silos. Plaintiff Michael Marino testified that among the main duties of an OM were: "making sure the front desk was filled"; "driv[ing] revenue from supplement tables"; "paperwork duties"; and being "responsible for the kids club". Second Kloosterman Decl.[15] ¶ 27, Exh. 22 (Marino Dep. 55:14–57:24). By contrast, other class members testified that the primary job duties of FMs included: assigning FIT hours to trainers[16]; overseeing trainers[17]; performing personal training sessions with clients[18]; selling of personal training plans, and assisting GMs in membership sales[19]. By comparison, the primary job duties of a GM were selling memberships, setting up corporate accounts,[20] club maintenance and cleanliness[21], or as Bobby DeSoto put it, "sell, sell, sell."[22]

Similarly, Plaintiffs' deposition testimony shows that even managers within the same silo often performed substantially different functions. For example, managers in the same silo testified to vastly different roles in the hiring process. FM Louis Ortiz testified that his involvement in the hiring process consisted solely of saying hello to someone dropping off an application and reporting the exchange to his district manager. If he ever sat in on an interview, he did not say anything. *Id.* at ¶ 30, Exh. 25 (Ortiz Dep. 77:21–80:25). By contrast, FM Dennis Sciacca testified that he asked candidates specific questions and conveyed to the district manager his opinions as to whether the applicant could effectively motivate others, build rapport, and put people at ease. *Id.* at ¶ 37, Exh. 32 (Sciacca Dep. 120:5–10; 124:18–22).

Managers in the same silo also testified to substantially different roles in disciplining subordinates. For example, GM William Clunn took part in the termination of an employee, including completing the termination documents, issuing verbal warnings for conduct violations, and reviewing the paperwork with Human Resources. *Id.* at ¶ 8, Exh. 3 (Clunn Dep. 67:17–70:17). By contrast, GM Cindy Magnani testified that she never had to discipline anyone over her twelve-year career. She believed that discipline was the responsibility of OMs and district managers. *Id.* at ¶ 26, Exh. 21 (Magnani Dep. 68:21–69:5).

The above examples are mere excerpts of an extensive comparison of class member deposition testimony presented by Defendants that shows substantial differences in the core job duties performed by managers within each silo. *See* Defs.' Second Mot. at 11. As noted by Defendants, the testimony shows that for every manager who says one thing about his or her job duties and responsibilities, another says

---

15. John Kloosterman, attorney for Defendants, filed a declaration support of Defendants' Motion to Decertify the Manager Class. Docket No. 376. ("Second Kloosterman Decl.").

16. *Id.* at ¶ 23, Exh. 18 (Kaipi Dep. 70:2–6)

17. *Id.* at ¶ 27, Exh. 22 (Marino Dep. 58:23–60:10)

18. *Id.* at ¶ 34, Exh. 29 (Reiter Dep. 105:10–19)

19. *Id.* at ¶ 32, Exh. 27 (Ra'Oof Dep. 55:13–56:9, 63:4–22)

20. *Id.* at ¶ 32, Exh. 27 (Ra'Oof Dep. 129: 14–24)

21. *Id.* at ¶ 7, Exh. 2 (Beauperthuy Dep. 28:20–29:1)

22. *Id.* at ¶ 12, Exh. 7 (DeSoto Dep. 87:25)

the opposite. Defs.' Second Mot. at 1. In light of this testimony by actual class members demonstrating the differences in their job duties, 24 Hour designee Bruhn's testimony that managers within each silo "should have" performed the same duties is insufficient to support a finding that Plaintiffs were similarly situated. The discrepancies between the duties actually performed by class members weigh in favor of decertification.

Plaintiffs next argue that Defendants' use of a uniform "blanket" classification policy that categorized each manager as exempt from overtime based solely on the manager's job title amounts to an admission by 24 Hour that all managers with the same job title performed the same duties and were similarly situated. Pl.'s Second Opp'n at 6. The Ninth Circuit recently made clear, however, that an analysis of what job duties each employee actually performed is more probative than an employer's classification policy when considering whether plaintiffs are similarly situated. In *In re Wells Fargo Home Mortgage Litigation,* the plaintiffs alleged that they were misclassified as exempt and argued that Wells Fargo had uniform policies regarding their classification. *Wells Fargo,* 268 F.R.D. 604, 609 (N.D.Cal.2010), *on remand from* 571 F.3d 953 (9th Cir.2009). In response, Wells Fargo argued that individualized inquiries into each plaintiff's job duties were needed to determine whether he or she qualified for various overtime exemptions. *Id.* The district court rejected Wells Fargo's argument and certified a Rule 23 class. The Ninth Circuit reversed, stating:

> The fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties.

*Wells Fargo,* 571 F.3d 953, 959 (9th Cir. 2009). On remand, the district court denied certification, finding that individualized inquiries into each class member's job duties were required despite the company's blanket classification policy. *Wells Fargo,* 268 F.R.D. at 611.

Although *Wells Fargo* dealt with a Rule 23 class action, other courts in this district have extended its reasoning to FLSA cases. *See, e.g., Hernandez v. United Auto Credit Corp.,* No. C–08–03404, 2010 WL 1337702 at *7 (N.D.Cal. Apr. 2, 2010) (granting decertification in a FLSA action because, despite an internal policy classifying all class members as exempt, the actual duties performed by the class members varied significantly). The case Plaintiffs cite for the contrary proposition, *Nerland v. Caribou Coffee,* 564 F.Supp.2d 1010, 1023–24 (D.Minn.2007) is from outside this circuit and does not control.

b. *Plaintiffs contend that members of the Manager Class did not have true management authority*

In their analysis of Plaintiffs' factual and employment settings, Plaintiffs contend that 24 Hour vested true management authority in district level, not club-level, managers. Pl.'s Second Opp'n at 2, 9. They argue that the primary job duties of the Manager Class were nonexempt tasks such as sales, cleaning, and clerical functions. *Id.* at 11. In essence, Plaintiffs appear to be arguing that their job duties are similar because they are all non-managerial in nature. Even if Plaintiffs are correct that the primary duties of class members were non-managerial, that would not be enough to support a finding that they are similarly situated. Rather, Plaintiffs must show that there was a substantial level of commonality among the allegedly non-exempt duties they performed. As discussed above, however, deposition testimony from class members illustrates significant differ-

ences among the job duties of managers both within the same silo and across silos.

Moreover, there is substantial deposition testimony to belie Plaintiffs' argument that all class members performed primarily non-exempt tasks. For example, Bruhn testified that class members were able to hire, able to recommend termination subject only to HR approval, and that they all primarily engaged in exempt duties and were properly classified as exempt. Third Kloosterman Decl.[23] ¶ 5, Exh. B (Bruhn Dep. 26:8–27:15, 33:8–16, 103:17–104:8). Testimony of some class members also suggests that they engaged in exempt activities. For example, FM Sciacca, OM Dillon, and GM DeSoto testified that they participated in the hiring process. Second Kloosterman Decl. ¶ 14, Exh. 9 (Dillon Dep. 88:2–90:23); *Id.* at ¶ 12, Exh. 7 (DeSoto Dep. 74:16–75:24); *Id.* at ¶ 37, Exh. 32 (Sciacca Dep. 120:5–10; 124:18–22; 169:9–23). FM Spencer, GM Clunn, and OM Pieske testified that they participated in terminating employees. *Id.* at ¶ 31, Exh. 26 (Pieske Dep. 76:19–77:11; 115:5–7); *Id.* at ¶ 8, Exh. 3 (Clunn Dep. 67:17–70:17); *Id.* at ¶ 38, Exh. 33 (Spencer Dep. 76:18–77:10). The Court notes, however, that the substantive issue of whether class members qualified as exempt from FLSA overtime requirements is not before the court at this stage. Rather, the issue before the Court is simply whether this case should proceed as a collective action. *See Pfohl,* 2004 WL 554834 at *7, 2004 U.S. Dist. LEXIS 6447 at *21 (C.D.Cal. Mar. 1, 2004). The substantial disparities among Plaintiffs' job duties weigh in favor of decertification.

### 2. *Individualized Defenses*

■■■ The second factor courts consider on decertification is whether the defendant asserts defenses that would require individualized proof. *Reed,* 266 F.R.D. at 460. Here, Defendants' primary defense is that Plaintiffs were properly classified as exempt employees and not entitled to the overtime compensation they seek to recover. Defs.' Second Mot. at 18. Under section 213(a)(1), employers are not required to provide overtime benefits to any employee in a bona fide executive[24], administrative[25], or professional capacity. 29 U.S.C. § 213(a)(1). As discussed in Part C.2 above, FLSA § 207(i) also provides a "commissioned retail sales exemption." Department of Labor regulations further provide for an exemption for highly paid employees who meet certain weekly and annual salary criteria. 29 C.F.R. § 541.601. Defendants argue that, given the wide range of job duties performed by individuals in the Manager Class, each Plaintiff will likely qualify for at least one, if not more, of the executive, administrative, highly compensated, or commissioned

---

**23.** John Kloosterman, attorney for Defendants, filed a declaration in support of Defendants' Second Reply. ("Third Kloosterman Decl.").

**24.** Employees meet the executive exemption when: (1) they receive a salary of not less than $455 per week; (2) their primary duty is management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; (3) they customarily and regularly direct the work of two or more employees; and (4) they have the authority to hire or fire other employees, or their suggestions as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight. 29 C.F.R. section 541.100(a).

**25.** Employees meet the administrative exemption if they receive a salary of not less than $455 per week, and their primary duties consist of: (1) the performance of office or non-manual work directly related to the management or general business operations of the employer or its customers; and (2) duties that require the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(1)-(3).

retail sales exemptions. Defs.' Second Mot. at 18. Even managers with the same job title, Defendants argue, may qualify for different exemptions in light of the variation among their duties and experiences. *Id.* Defendants contend that highly individualized inquiries will be necessary in order to determine whether each class member falls under one of the FLSA exemptions. These individualized inquiries, according to Defendants, make proceeding as a collective action impracticable.

The Court agrees with Defendants. Where, as here, significant differences exist among the job duties of the putative class members (even for managers with the same job title), a determination whether class members qualify for FLSA overtime exemptions will necessitate an individualized inquiry into the circumstances of each Plaintiff. *See, e.g., Johnson,* 2005 WL 1994286 at *6, 2005 U.S. Dist. LEXIS 44259 at *27 (decertifying a class because determining whether plaintiffs were subject to the commissioned retail sales exemption would necessitate individualized inquiries); *Hernandez,* 2010 WL 1337702 at *3, 2010 U.S. Dist. LEXIS 40209 at *8 (decertifying a class in part because determining whether each Plaintiff met the executive exemption would necessitate individualized inquiries); *Pfohl,* 2004 WL 554834 at *9, 2004 U.S. Dist. LEXIS 6447 at *27 (C.D.Cal. Mar. 1, 2004) (decertifying a class because determining whether each Plaintiff met the administrative exemption would necessitate individualized inquiries). *Johnson v. Big Lots Stores, Inc.* is illustrative. 561 F.Supp.2d 567, 586 (E.D.La. 2008). In *Johnson,* the court decertified a FLSA class because it determined that the defendant's claims that its employees were subject to the executive exemption necessitated individualized inquiries. *Id.* The court explained, "[u]sing representative proof is problematic if for every instance in which an opt-in plaintiff reported that she hired subordinates, there is an alternative response to the contrary." *Id.* As noted above, the deposition testimony of members of the Manager Class shows that for every manager who says one thing about his or her job duties and responsibilities, another says the opposite. In light of these discrepancies, representative testimony would be inadequate to determine whether Plaintiffs were properly categorized as exempt.

The Court is not persuaded by Plaintiffs' argument that 24 Hour was precluded from classifying managers as exempt because it utilized a disciplinary policy that violated the "Salary–Basis Test." Under this test, an employer may not classify its employees as exempt if the employee's salary may vary due to the quantity or quality of work performed. 29 C.F.R. § 541.602(a). Plaintiffs contend that 24 Hour cannot meet the salary-basis test because, for part of the class period, it maintained a policy of docking pay of managers for certain violations of company policy. Plaintiffs therefore argue that 24 Hour is precluded from raising exemptions as defenses to Plaintiffs' claims. Pl.'s Second Opp'n at 12. Defendants offer a number of factual and legal arguments to rebut Plaintiff's claims. We need not address them all here, however, because one is dispositive. Under Department of Labor regulations, even if an employer incorrectly docks an exempt employee's salary, it loses the exemption only for that workweek, not for all time. 29 C.F.R. § 541.603 ("the exemption is lost during the time period in which the improper deductions were made ..."). Thus, whether 24 Hour incorrectly docked a particular employee's pay and is therefore barred from mounting an exemption defense as to that Plaintiff is yet another individualized issue not amenable to common proof.

■ Lastly, Plaintiffs contend that 24 Hour has produced insufficient evidence that any of the class members qualified for any of the exemptions at issue. This argument fails for two reasons. First, at this stage in the litigation, Defendants do not have the burden of proving that the exemptions apply to the class members. They will have that burden at trial. On the instant motion, it is Plaintiffs who have the burden of proving that they are similarly situated. *Pfohl,* 2004 WL 554834 at *6, 2004 U.S. Dist. LEXIS 6447 at *21, 27 n. 5 (whether collective action plaintiffs meet the criteria of an exemption is irrelevant to the determination of whether plaintiffs are similarly situated).

Second, Defendants have produced evidence that some class members may qualify for the exemptions. For instance, some class members admit to playing a material role in hiring and firing decisions, which could qualify them for the executive exemption. Second Kloosterman Decl. ¶ 22, Exh. 17 (Johnson Dep. 103:4–105:4); *Id.* at ¶ 14, Exh. 9 (Dillon Dep. 88:2–90:23). Others testified that they reviewed and processed paperwork relevant to business operations, including payroll, timesheets, new hires, and membership agreements, and that they handled their club's banking. *Id.* at ¶ 14, Exh. 9 (Dillon Dep. 56:25–57:2; 62:2–10; 63:15–22; 65:9–66:1); *Id.* at ¶ 21 (Janke Dep. 38:6–12; 39:25–40:11). These employees might qualify for the administrative exemption. Additionally, payroll data for some class members shows that they met the criteria for the commissioned retail sales exemption during at least some pay periods. Soriano Decl.[26] ¶¶ 4–13, Exhs. 3–12 (sample paystubs for Plaintiffs Ra'Oof, Clunn, Beauperthuy, Symmonds, Cromartie, showing that each received more than 50 percent of his or her income from commissions over a one-month period).

In sum, the defenses asserted by 24 Hour will necessitate individualized inquiries, making adjudication of Plaintiffs' claims by common proof difficult. This weighs heavily in favor of decertification.

### 3. *Fairness and Procedural Considerations*

When weighing fairness and procedural considerations, "the court must balance the benefits of a reduction in the cost to individual plaintiffs and any increased judicial utility that may result from the resolution of many claims in one proceeding with the cost of any potential detriment to the defendant and the potential for judicial inefficiency that could stem from collective treatment." *Wilks,* 2006 WL 2821700 at *8, 2006 U.S. Dist. LEXIS 69537 at *26.

■ Here, fairness and procedural considerations weigh in favor of decertification. The evidence demonstrates that Plaintiffs' job duties varied significantly both within and across silos. Each Plaintiff's job duties will therefore need to be determined on an individual basis, and whether each Plaintiff qualified for an exemption to FLSA overtime requirements will also require individualized analysis. The judicial inefficiency that would result from trying Plaintiffs' claims collectively outweighs the benefits to Plaintiffs of proceeding collectively. Additionally, the detriment to Plaintiffs from decertification is ameliorated by the fact that each Plaintiff is subject to an arbitration agreement with 24 Hour. While 24 Hour refused to proceed to a class-wide arbitration, it would agree to arbitrate individual claims. Defs.' Second Reply at 14. Thus, after decertification, Plaintiffs who wish to pursue their

---

**26.** Julius Soriano ("Soriano"), Senior Director of Pay Processes for 24 Hour, submit-ted a declaration in support of Defendants' Motion to Decertify the Manager Class.

individual claims need not file individual lawsuits for relief.

### 4. *Proceeding by Subclasses*

■ Here, unlike with the Trainer Class, the division of managers into three silos provides a plausible dimension along which to divide the putative class into a subclass of GMs, a subclass of OMs, and a subclass of FMs. However, the evidence shows that even within each silo the duties and responsibilities of managers differed widely. Moreover, proceeding with subclasses would not change the fact that individualized inquiries will still be required to determine whether each plaintiff qualifies for one of the FLSA overtime exemptions. Proceeding with subclasses would therefore do little to lessen the chaos and inefficiency that would result from proceeding with a single collective action.

## V. *CONCLUSION*

For the foregoing reasons, the Court DENIES all Motions to Strike. The Court GRANTS the Motion to Decertify the Trainer Class filed by Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc. The Court also GRANTS the Motion to Decertify the Manager Class filed by Defendants 24 Hour Fitness USA, Inc. and Sport and Fitness Clubs of America, Inc. All opt-in Plaintiffs are DISMISSED from this action without prejudice to each such opt-in Plaintiff filing a suit in his or her own behalf. To avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases, the Court invokes its equity powers to toll the applicable statutes of limitations for 30 days after the entry of this Order.

The claims of the fifty-eight named Plaintiffs, Gabe Beauperthuy, et al., remain pending herein for trial. The named Plaintiffs have the option of withdrawing from the instant action and seeking resolution of their claims by arbitration pursuant to their arbitration agreement with Defendants, or proceeding to trial before this Court separately in the order in which their names are listed on the complaint. They shall notify the Court within 60 days of whether they wish to proceed to trial.

IT IS SO ORDERED.